Yousuf Mohammad KAHN, on behalf of himself and as a class representative of all other persons similarly situated, Plaintiff,

v.

SUPERIOR CHICKEN & RIBS, INC., d/b/a New York Fried Chicken, Defendant.

No. 01–CV–5479(NG).

United States District Court, E.D. New York.

July 29, 2004.

Saul D. Zabell, New York, for plaintiff.

Kenneth A. Goldberg, New York, for defendant.

## ORDER

GERSHON, District Judge.

Plaintiff Yousuf Mohammad Kahn brings this action, on behalf of an alleged class, against his former employer, Superior Chicken & Ribs, Inc., alleging violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("the FLSA") and New York Labor Law §§ 160 *et seq.* By order of February 13, 2003, the court granted defendant's motion to dismiss plaintiff's claims for lost wages relating to defendant's alleged failure to provide meal periods pursuant to New York Labor Law § 162 and for equitable relief and monetary damages relating to defendant's alleged failure to make applicable statutory contributions and deductions from employees' wages. Defendant now brings this motion pursuant to Federal Rule of Civil Procedure 56 for summary judgment denying plaintiff's remaining claims, which are for overtime pay under the FLSA and state law. Defendant also requests an award of attorneys' fees and costs.

For the following reasons, defendant's motion for summary judgment is granted.

### Standard for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. Proc. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lipton v. Nature Co.,* 71 F.3d 464, 469 (2d Cir.1995). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citation omitted).

### The FLSA and New York Labor Law

 Under the FLSA and New York law, there is a general rule that employees who work in excess of forty hours in a week must be compensated for this overtime at a rate of one and half times their regular rate of pay. *See* 29 U.S.C. § 207(a)(1); N.Y. Labor Law § 160. However, employers are exempt from this overtime pay requirement if the employee is "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1); N.Y. Labor Law § 651(5)(c).[1] It is the employer's burden to demonstrate that it is entitled to a particular exemption. *See Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 614 (2d Cir.1991). Because the FLSA is a remedial statute, its exemptions are construed narrowly against the employer. *See Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); *Martin,* 949 F.2d at 614.

 In this case, defendant argues that plaintiff is exempt from the overtime pay requirement because he meets the definitions of both an executive employee and an administrative employee. The regulations provide a "short test" for determining whether an employee qualifies for these exemptions, which applies to employees earning $250 per week or more. *See* 29 C.F.R. § 541.1(f) (executive employees); 29 C.F.R. § 541.2(e)(2) (administrative employees); *see also Donovan v. Burger King Corp.,* 675 F.2d 516, 517–18, 520 (2d Cir.1982). Both parties agree that the short test should be used in this case. There are two requirements that the employer must meet to satisfy the short test: the "salary basis" requirement and the "duties" requirement. *See Wright v. Aargo Security Services, Inc.,* 2001 WL 91705, *4, 2001 U.S. Dist. LEXIS 882, *3 (S.D.N.Y.2001).

To satisfy the salary basis requirement, an employee must "regularly receive[ ] each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a). An employee paid strictly on an hourly basis would not fall within the definition of a salaried employee. *Wright,* 2001 WL 91705, at *5, 2001 U.S. Dist. LEXIS 882, at *14.

 Plaintiff was paid between $450 and $600 per week during his employment with defendant. It is undisputed that plaintiff always received $250 each week by check that was never subject to deductions. It is also undisputed that plaintiff received additional cash payments for a total compensation of $600 per week at the

---

1. The definitions of "executive" and "administrative" under New York law are nearly identical to those under FLSA, except for the minimum salary requirement, discussed below. For purposes of this motion, I will assume, as both parties agree, that the standards applicable to plaintiff's state law claim are substantially the same as those governing the FLSA claim.

end of his employment, with the exception that plaintiff claims $10 was occasionally deducted from this amount when he was sick or when the lights were left on in the restaurant.[2] The pay stubs in the record show regular payments of $250 with no deductions, which was confirmed by Andy Fradelakis, the restaurant's bookkeeper, at his deposition.

Plaintiff was not required to punch a time card at the restaurant. Although plaintiff claims he was paid on an hourly basis, earning $8.25 per hour and working 71 hours per week, Farideh Ghajar, the day shift manager, who was responsible for calling in the payroll, testified that the restaurant did not keep track of plaintiff's weekly hours. Abdul Mosaver, the restaurant's owner, also testified that they did not count plaintiff's hours. The pay stubs in the record for the $250 weekly payments do not indicate an hourly rate, listing only "regular pay—$250," and do not report the number of hours worked. There is no record of the cash payments. Fradelakis testified that plaintiff was set up in the salary accounting system as a salaried employee and that the restaurant did not report the hours worked by salaried employees. Even if plaintiff's conclusory allegations regarding deductions are true, based on the undisputed facts, plaintiff satisfies the salary basis prong of the short test because he always received at least $250 that was never subject to deductions.

■ I turn now to the duties prong of the short test. To qualify as an executive, plaintiff's primary duty must "consist[ ] of the management of the enterprise in which [he] is employed ... and include[ ] the customary and regular direction of the work of two or more other employees therein." 29 C.F.R. § 541.1(f). Alterna-

tively, to qualify as an administrative employee, his primary duty must consist of the "performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers ... which includes work requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.2(e)(2). The regulations provide that "it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time." 29 C.F.R. § 541.103. However, "time alone ... is not the sole test" and an employee "may nevertheless have management as his primary duty if the other pertinent factors support such a conclusion." *Id.; see also Donovan*, 675 F.2d at 521.

Determining whether an employee is exempt from the overtime pay requirements is a fact intensive inquiry. *See Wright*, 2001 WL 91705, at *10, 2001 U.S. Dist. LEXIS 882, at *30. The regulations list five factors that may help determine whether an employee's primary duty is management: (1) the amount of time spent performing managerial duties; (2) the relative importance of the managerial duties as compared with other duties; (3) the frequency with which he exercises discretionary powers; (4) his relative freedom from supervision; and (5) the relationship between his salary and the wages paid to employees doing similar non-exempt work. 29 C.F.R. § 541.103.

With the exception of plaintiff's conclusory statements, all of the evidence in the record indicates that plaintiff was employed as a manager at the restaurant and that his duties were executive or administrative in nature. It is undisputed that plaintiff applied for a position as manager

---

**2.** Although plaintiff testified that deductions were made for missed time, suggesting he was paid on an hourly basis, the amounts he claims were deducted, *i.e.*, $10, do not correspond to his claimed hourly wage of $8.25.

at the restaurant and that his prior work experience was as an assistant manager with Pizza Hut, a manager with Sbarro, and a manager with KFC. Plaintiff worked the night shift at the restaurant, during which there was no other on-site manager on duty. It is undisputed that the staff typically consisted of at least four to five employees in addition to plaintiff and that these other employees worked as cooks, cashiers and bread makers. Mosaver, the restaurant owner, would visit the restaurant for 15–20 minutes each night, but did not stay for the duration of the night shift. Plaintiff acknowledges that his employer called him manager and that he represented himself as such to the Health Department and the Fire Department at the request of his employer. Although an employee's title is not determinative of his status as an exempt employee under the FLSA, that plaintiff was the only employee designated as manager by his employer during the night shift and that there were no other supervisors at the restaurant indicates that he was given a significant amount of responsibility. *Cf. Donovan*, 675 F.2d at 522 (upholding district court's conclusion that assistant managers at Burger King earning more than $250 were exempt, based in part on the finding that "for the great bulk of their working time, Assistant Managers are solely in charge of their restaurants and are the 'boss' in title and in fact").

It is undisputed that plaintiff wore a blue shirt while on duty at the restaurant, while all other workers on the night shift wore red shirts. Farideh Ghajar, the day shift manager, also wore a blue shirt and testified that the blue shirt indicated that she and plaintiff were managers. Plaintiff's curious claim that the blue shirt he wore merely reflected his immigration status as a legal resident is not supported by any evidence other than his conclusory statement. It is undisputed that plaintiff had a key to the restaurant and regularly locked the restaurant at the end of his shift; however, he claims that all the cashiers could lock the restaurant. According to Ms. Ghajar, plaintiff's duties on the night shift were similar to her duties as day shift manager; they included opening and closing the store, taking inventory, supervising the staff, and handling the cash drop in the safe. Ms. Ghajar also testified that she and plaintiff would cover for each other at times. For example, if she were sick or on vacation, plaintiff would take over her shift. She testified that, while he was covering for her, plaintiff would sometimes call in the payroll to the restaurant's accountant, who issued the pay checks. The one weekly work schedule included in the record shows plaintiff working the day shift on the one day that Ms. Ghajar was off work.

Abdul Mosaver, the restaurant's owner, testified that plaintiff was the night manager and reported directly to him. According to Mosaver, plaintiff was responsible for accounting for cash receipts and inventory. He testified that both Ms. Ghajar and plaintiff would prepare the work schedules for the restaurant after consulting with him. He also testified that he consulted plaintiff regarding hiring and firing decisions and that plaintiff was involved in handling problems with the restaurant staff. He stated that plaintiff was responsible for finding replacements for absent employees.

In his deposition and affidavits, plaintiff disputes these description of his job duties, instead claiming he was only a cashier. He testified that his primary duties were working the cash register and cooking. He claims he never hired, fired or disciplined any employees and that he did not have the authority to do so. Plaintiff also claims that only Ms. Ghanjar set work schedules. Plaintiff acknowledges that he performed inventory-related tasks but

claims that he did so because other cashiers had difficulty performing such tasks because of their language problems.

The record includes reports from plaintiff's doctors following a car accident on June 9, 2001, which caused him to miss work until his termination. In three different doctors' reports covering the period from June 27 to November 15, 2001, the doctors, reporting their interviews with plaintiff, indicate he was employed as a manager. However, in an affidavit dated September 3, 2003, plaintiff claims that he merely referred to himself as a manager "for purposes of convenience" when speaking with the doctors. The record also includes a Chapter 13 bankruptcy petition plaintiff filed in 2000, in connection with a store in which he was part owner, which lists his occupation as "Manager—Fast Food." Plaintiff signed this document under penalty of perjury. Plaintiff does not dispute making these representations. In his September 3, 2003 affidavit, plaintiff claims that his employer "deemed" him a manager but that this title did not reflect his job duties.

■ In light of plaintiff's repeated admissions and the other evidence in the record, no reasonable jury could conclude that plaintiff was not a manager.[3] Plaintiff wore the same uniform, a blue shirt, and received the same compensation, $600 per week, as the restaurant's day shift manager, Ms. Ghajar. Additionally, plaintiff sometimes filled in for the day shift manager when she was absent from work. Plaintiff had no on-the-job supervision other than brief visits from Mosaver, the restaurant's owner, and concedes that no other employee on the night shift acted as manager. Plaintiff acknowledges that he was responsible for taking inventory during his shift. Based on these undisputed facts and plaintiff's record admissions regarding his job title, as well as the description of job duties given by Ghajar and Mosaver, no reasonable jury could conclude that plaintiff was not employed as a restaurant manager with supervisory and managerial duties. These job functions satisfy the duties requirement under the short test. Therefore, plaintiff is exempt from the FLSA's overtime pay requirements as a matter of law.

### Attorneys' Fees

Defendant also seeks an award of its attorneys' fees and costs incurred in making its motion and defending plaintiff's claims on the ground that plaintiff's claims are frivolous. Rule 11 provides that a motion for sanctions

shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate [the Rule]. It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21

---

**3.** Defendant argues plaintiff should be judicially estopped from denying that he was employed as a manager based on his prior admissions, both written and verbal. Judicial estoppel is aimed at preventing "a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a prior legal proceeding." *Bates v. Long Island Railroad Co.,* 997 F.2d 1028, 1037 (2d Cir.1993). However, the Second Circuit has limited the doctrine to situations where "a tribunal in a prior proceeding has accepted the claim at issue by rendering a favorable decision." *Simon v. Safelite Glass*

*Corporation,* 128 F.3d 68, 72 (2d Cir.1997). Thus, the elements of judicial estoppel are "[f]irst, the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding, and second, the prior inconsistent position must have been adopted by the court in some manner." *Bates,* 997 F.2d at 1038. Defendant has not demonstrated that any other tribunal has adopted plaintiff's statements that he was a manager in issuing any decision in plaintiff's favor. Thus, the second element of judicial estoppel is not satisfied, and the doctrine may not be invoked in this case.

days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

Fed.R.Civ.P. 11(c)(1)(A). Here, defendant did not comply with these procedural requirements. Thus, defendant's request is denied. *See Perpetual Secs., Inc. v. Tang,* 290 F.3d 132, 141–42 (2d Cir.2002) (finding that a district court's award of sanctions in contravention of the explicit procedural requirements of Rule 11 was an abuse of discretion).

■ Defendant also cites 28 U.S.C. § 1927 in its request for fees, which provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." An award of expenses under § 1927 is proper "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri v. Thompson,* 803 F.2d 1265, 1273–74 (2d Cir.1986). In this circuit, the imposition of sanctions under § 1927 also requires a finding of bad faith. *Id.; see also Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323, 338–39 (2d Cir.1999). No such showing has been made here. Accordingly, defendant's request for attorneys' fees is denied.

## CONCLUSION

Defendant's motion for summary judgment on plaintiff's remaining claims is granted. Defendant's request for attorneys' fees is denied. The Clerk of Court is directed to enter judgment for the defendant.

**SO ORDERED.**